FILED

MAY 1 2 2025

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | I N F O R M A T I O N |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. **5:25 CR 0 0 2 4 0** |
| | ) | Title 18, United States Code, |
| PHUONG VAN DAO, | ) | Sections 1001(a)(2) and 1343 |
| | ) | |
| Defendant. | ) | |

## JUDGE ADAMS

<u>GENERAL ALLEGATIONS</u>

At all times relevant to this Information, unless otherwise specified:

1.    Defendant PHUONG VAN DAO was a resident of Stow, Ohio, in the Northern District of Ohio.

2.    Defendant temporarily resided in the Philippines between in or around March 2020 through in or around March 2023.

3.    The United States Small Business Administration ("SBA") was an executive branch agency of the United States government.  The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses, and assisting in the economic recovery of communities after disasters.  As part of this effort, the SBA enabled and provided for loans, which had government-backed guarantees.

4.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and was designed to provide emergency financial assistance to Americans suffering the economic effects caused by the COVID-19 pandemic.  One

source of relief under the CARES Act was authorization for the SBA to issue loans to small businesses and non-profit entities experiencing revenue loss due to the pandemic.

5.    Two forms of assistance under the CARES Act were the Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loan ("EIDL") program, both of which provided loan assistance for certain businesses negatively affected by the COVID-19 pandemic.

<u>The Paycheck Protection Program</u>

6.    The PPP was a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

7.    To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

8.    PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia or Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

9.      The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

The Economic Injury Disaster Loan Program

10.     Certain provisions of the CARES Act, in conjunction with an officially declared disaster by the United States Government, allowed the SBA to offer EIDL funding to businesses and non-profit organizations that existed in an operational condition on February 1, 2020, and were negatively affected by the COVID-19 pandemic.

11.     To apply for EIDL funding, applicants submitted personal and business information via the SBA online portal.  The EIDL application process involved filling out an electronic form with information relating to the applicant's business in the 12 months prior to the COVID-19 pandemic.

12.     The information to be provided to the SBA by the applicant included the ownership of the affected business; the size of the business; the number of employees; the gross business revenues realized; and the cost of goods sold.  This information, submitted by the applicant, was then used by SBA systems to calculate the amount of money the applicant was eligible to receive.

13.     When submitting an application, applicants for EIDL funding had to affirmatively certify by checking a box that the information in the application was true and correct under the penalty of perjury and applicable criminal statutes.  Applicants generally did not have to submit documentation supporting the representations in the applications.

14.     In conjunction with the submission of an EIDL application, at certain times during the EIDL program, an applicant could also request and then receive an EIDL Cash Advance Grant (an "Advance"), generally up to $1,000 per employee, up to a total of $10,000. The Advance was not required to be repaid to the SBA if the loan application was ultimately denied by the SBA, or if the applicant declined the EIDL that might be offered by the SBA at a later date.

15.     A non-agricultural, for-profit applicant was generally eligible to receive EIDL funding in an amount corresponding to its gross margin over six months (generally consisting of the reported revenue minus the reported cost of goods sold), less the amount of any Advance and certain other government-backed compensation, with interest accruing at a rate of 3.75%.

16.     Funds paid by the SBA under the EIDL program were processed and issued by SBA from the state of Colorado and sent to the applicant borrower's financial institution.

17.     Pursuant to the provisions governing the EIDL program, loan proceeds were required to be used by the affected business receiving EIDL funding only for certain permissible expenses.  Proceeds from the loans could be used as working capital to pay normal operating expenses such as continuation of health care benefits, rent, utilities, and fixed debt payments.

<u>Relevant Financial Institutions</u>

18.     Lenders 1 through 4 were third-party participating lenders in the PPP.

19.     Bank 1 was a federally insured financial institution headquartered in Columbus, Ohio.  Bank 1 had branch offices located in the Northern District of Ohio.

## COUNT 1
(Wire Fraud, 18 U.S.C. § 1343)

The Acting United States Attorney charges:

20.     The factual allegations of paragraphs 1 through 19 of this Information are re-alleged and incorporated by reference as if fully set forth herein.

### The Scheme to Defraud

21.     From in or around February 2021 through in or around February 2024, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant PHUONG VAN DAO devised and intended to devise a scheme and artifice to defraud the Small Business Administration and Lenders 1 through 4, and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

### Purposes of the Scheme

22.     The purposes of the scheme included, but were not limited to, the following: for Defendant to unjustly enrich himself by (a) obtaining PPP, EIDL, and other loans from financial institutions through false statements; (b) diverting proceeds for Defendant's use and the use and benefit of others and to further the scheme; (c) fraudulently obtaining forgiveness of the loans; and (d) concealing the scheme.

### Manner and Means of the Scheme

23.     It was part of the scheme that:

a.      Defendant made false representations on loan applications for PPP loans and EIDL funds, as well as other bank loans from federally insured financial institutions, in order to fraudulently obtain funds.

5

b.     Defendant then claimed to be a victim of identity theft in order to induce federally insured financial institutions and the SBA to discharge the fraudulently obtained loans, knowing that he had applied for the loans himself and was not a victim of identity theft.

c.     Defendant filed false claims of identity theft with multiple government agencies and lenders, as well as other entities involved in providing reporting and communications services used in the loan applications process, and submitted forged and fraudulent documents in support of his false claims of identity theft.

<u>Acts in Furtherance of the Scheme</u>

24.     In furtherance of the scheme and to accomplish its purposes, Defendant committed and caused to be committed, in the Northern District of Ohio, and elsewhere, the following acts, among others.

I.     *2021: Obtaining PPP and EIDL Loans*

25.     On or about the dates listed below, and while living in the Philippines, Defendant applied for and received the following PPP and EIDL loans and EIDL Advance:

| LENDER | LOAN TYPE | AMOUNT | DATE FUNDED |
|---|---|---|---|
| Lender 1 | PPP | **$20,157** | 2/19/21 |
| Lender 2 | PPP | **$20,336** | 3/8/21 |
| Lender 3 | PPP | **$20,832** | 3/22/21 |
| Lender 4 | PPP | **$20,338.52** | 4/7/21 |
| SBA | EIDL | **$57,100** | 9/7/21 |
| SBA | EIDL (Targeted Advance) | **$10,000** | 9/7/21 |
| **TOTAL** | | **$148,763.52** | |

26.     On those applications, Defendant listed business addresses in Stow, Ohio, and made materially false statements on the loan applications about the businesses' operational

status, revenues, and employees.  Defendant also concealed the fact that he was not living in the
United States at the time he applied for and received the loans.

27.     Upon receiving the loan proceeds in his bank accounts, Defendant did not use the
funds for the allowable purposes of the loans under the PPP and EIDL program rules identified
in the applications he had submitted, which rules he had promised to follow.  Instead, Defendant
transferred the loan funds into other accounts he controlled, withdrew the funds in cash, and used
the funds to make purchases for his personal use.

II.     *2023-2024: Fraudulent Attempts to Discharge the Loans*

28.     On or about July 18, 2023, Defendant submitted a complaint to the Federal Trade
Commission ("FTC") for identity theft, including in the "personal statement" section the
following [grammar and spelling sic]: "I realized that I am a victim of identity theft when i got
back into the United States in March 2023.  My email account and facebook account was
compromised when I was living in the Philippines.  I was living in the Philippines during covid
19 from March 2020 until March 2023.  I did not apply for any business credit during this time."
Defendant knew at the time he submitted the complaint that it was false.

29.     On or about September 22, 2023, Defendant submitted a Declaration of Identity
Theft form to the SBA via email alleging that he was the victim of identity theft for the PPP and
EIDL loans that were in default, and alleging that he discovered the fraud when he was applying
for a small business loan from Bank 1.

30.     On or about November 3, 2023, after speaking with a representative of the SBA,
Defendant also emailed to the SBA what purported to be Bank 1 personal account statements for
January through May 2021, and what purported to be ten months of Bank 1 business account
statements for 2021, but which were actually forged statements that had been created to appear to

be genuine Bank 1 statements from the relevant time period. Defendant knew the account statements were forged when he emailed them to the SBA and knew that he did not hold any accounts at Bank 1 prior to 2023.

31.     From in or around July 2023 through in or around November 2023, as part of his scheme to get his fraudulently obtained PPP and EIDL loans forgiven, Defendant made at least a dozen different fraudulent identity theft complaints and reports with credit bureaus, government agencies, government officials, banks, and other private businesses, including complaints to the offices of his Congressional Representative and Ohio's United States Senators and a report to his local police department.

32.     On or about January 2, 2024, Defendant emailed the SBA Office of Inspector General ("SBA-OIG") for assistance with his SBA identity theft claim, stating in part, "I did not apply for any kind of loans from the SBA. I did not receive any of the funds from the fraudulent loans. I was not aware of the loans until the time I filed the complaint for identity theft to the SBA [referring to the September 22, 2023, Declaration of Identity Theft]."

33.     On or about January 9, 2024, Defendant again emailed the forged Bank 1 statements to a representative of the SBA-OIG in support of his claim of identity theft.

34.     On or about February 1, 2024, Defendant met with a representative of the SBA-OIG. After being advised that he could be charged with a violation of 18 U.S.C. § 1001 if he gave false statements to federal agents, Defendant reiterated his false claims that he was a victim of identity theft and claimed that the forged Bank 1 statements were as a result of software incorrectly autocorrecting information when he took a picture of hard copies of the records with his phone. Defendant stated that he used an optical character recognition scanner that could have

changed the transaction history and dates on the bank statements.  Defendant knew these statements to be false.

Execution of the Scheme

35.     On or about September 22, 2023, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant PHUONG VAN DAO, having devised and intended to devise the foregoing scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the foregoing scheme and artifice to defraud, and attempting to do so, knowingly caused to be transmitted a writing, sign, signal, picture, and sound by means of wire communications in interstate commerce, to wit, Defendant submitted false declarations of identity theft to the SBA via email in an attempt to fraudulently discharge fraudulently-obtained PPP and EIDL loans funded by the SBA when, as he well knew, he had submitted the loan applications and falsified the bank records and was not the victim of identity theft, said transmission sent from the State of Ohio and routed across state lines.

All in violation of Title 18, United States Code, Section 1343.

COUNT 2
(False Statement, 18 U.S.C. § 1001(a)(2))

The Acting United States Attorney further charges:

36.     The factual allegations of Count 1 of this Information are re-alleged and incorporated by reference as if fully set forth herein.

37.     On or about November 3, 2023, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant PHUONG VAN DAO willfully and knowingly, in a matter within the jurisdiction of the executive branch of the United States, specifically, the United States Small Business Administration, made a materially false, fictitious, and fraudulent

9

statement and representation, to wit: Defendant submitted falsified bank statements to the United

States Small Business Administration via email in support of his attempt to fraudulently

discharge fraudulently-obtained PPP and EIDL loans funded by the SBA, claiming that he had

not submitted the loan applications or received the funds at issue, and was instead the victim of

identity theft, as shown in the bank statements he submitted, when, as he well knew, he had

submitted the loan applications, had received and spent the proceeds, was not the victim of

identity theft, and had falsified the submitted bank records.

All in violation of Title 18, United States Code, Section 1001(a)(2).

CAROL M. SKUTNIK
Acting United States Attorney

By: _____

Elliot Morrison
Chief, White Collar Crimes Unit